## COSTIGAN and another vs. HAWKINS.

*Cause of action—Implied warranty of title in sale of personal property—Sale of several articles together for several prices—Right to rescind in part—Contract to convey exclusive right—Breach of contract.*

1. A offered to sell B the right to manufacture and sell " Hecker Bros'. Self-Rising Flour," and the recipe therefor, representing that he had the exclusive right to such manufacture and sale, acquired from D, of New York, and exhibiting a written agreement purporting to be executed by D, and to be a sale of such right, which he represented as a genuine and valid agreement; and B, relying upon these representations, contracted with A for the purchase of said right and recipe, and of some chattels and fixtures which had been used in said business, A agreeing to convey said property and said exclusive right for $1,000. The value of the articles, other than said right and recipe, as estimated by the parties at the time, did not exceed $200, and the balance of said $1,000 was paid, and understood by the parties to be paid, solely for said right. A, however, did not in fact own any such exclusive right, and said pretended written agreement was never executed by D. *Held* (DOWNER, J., dissenting), that these facts showed a cause of action in favor of B against A.

2. DIXON, C. J., thought the cause of action shown was properly for damages for the breach of A's contract. COLE, J., *was also of the opinion* that the sale of the right to manufacture, etc., and that of the other property, were *severable*; and that B might rescind the contract for the sale of such right, and recover the price paid therefor, on the ground of an entire failure of consideration, without offering to return the other property.

3. A, in such a case, must be held to have *warranted his title* to the exclusive right which he undertook to sell. [And *it seems* there would have been an *implied* warranty, even if his representations, relied on by B, had not constituted an *express* warranty.]

4. The impossibility of securing an exclusive right to manufacture "Hecker Bros.' Self-Rising Flour" is not so perfectly obvious, that the court can pronounce a contract for that purpose void on that ground.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint in this action alleges the following facts: On, etc., the defendant offered to sell the plaintiffs the right to manufacture and sell in this state, the article known as

" Hecker Bros.' Self-Rising Flour," and the recipe for the same, representing that he owned the exclusive right of manufacturing and selling said article, and selling said recipe, within this state, acquired from John D'Wight & Co., of New York city, by an agreement made nominally between them and one C. H. Hawkins, a son of said defendant, but that said business and said right really belonged to him, said defendant, and he had the right to sell and dispose of said right, and receive the money therefor.   Defendant at the same time exhibited to plaintiffs what purported to be a written agreement between said Jno. D'Wight & Co. and said C. H. Hawkins, whereby said D'Wight & Co. sold to said C. H. Hawkins, or his assigns, the right of the recipe for manufacturing the article known as "Hecker Bros.' Self-Rising Flour," together with instructions for manufacturing the same, within this state, and bound themselves not to dispose of said recipe to any other person therein. Said agreement purported to have been made for the consideration of $800 in hand paid, and defendant represented to plaintiffs that it was a genuine, valid agreement, and that he had advanced $800, which was paid to D'Wight & Co., for the purchase of the right which it purported to convey. Relying upon these representations, plaintiffs contracted with defendant for the purchase of the right so conveyed, and for some articles of personal property and fixtures which had been used in said business, by which contract defendant agreed to convey plaintiffs said property and said exclusive right for $1,000, which they paid to defendant; but the conveyance of said property and said exclusive right was executed to plaintiffs by " C. H. Hawkins & Bro.," who were the sons of defendant, for the reason, as defendant represented at the time, that said business was conducted and said right purchased of D'Wight & Co. in the name of his said sons, though he was the real owner and had the right

to dispose thereof.. The entire value of what was purchased.in said contract, except said exclusive right to manufacture and sell said Self-Rising Flour and said recipe in this state, as estimated by the parties to the contract at the time, did not exceed $200 ; and the balance of said consideration, i. e. the sum of $800, was paid and understood by the parties to be paid, solely for said exclusive right. Neither defendant nor his sons, nor either of them, owned in fact any exclusive right to manufacture and sell said Self-Rising Flour and said recipe, and no such right was or could be conveyed by them or either of them to plaintiffs ; and said pretended written agreement between D'Wight & Co. and C. H. Hawkins was never executed by the former, nor by any one by them thereto authorized, and was spurious and void. On these facts it is alleged " that there was a failure of the title and right in defendant to sell and convey said exclusive right, and a failure to comply with his contract to convey the same to plaintiffs, and that by reason thereof the title of plaintiffs to said exclusive right has failed, and that they have been damaged by the breach of said contract on the part of said defendant, in the sum of $800 ; " and due demand and refusal of repayment of said sum is also alleged to have been made before the commencement of this action. Judgment is thereupon demanded against defendant for $800 damages.—A demurrer to the complaint as not stating a cause of action, was sustained ; and from this decision the plaintiffs appealed.

*Paine & Co.*, for appellants, contended, 1. That the complaint shows a good cause of action as for money had and received. Where there is a contract for the purchase of several articles for a gross sum, but each article has a separate estimated price in making up such gross sum, if the title to one of the articles fails, such an action may be maintained for the price paid therefor. *Miner v. Bradley*, 22

Costigan and another vs. Hawkins.

Pick., 457; *Jones v. Ryde*, 1 E. C. L., 166; *Cushing v. Rice*, 46 Me., 303; *Michael v. Mills*, 17 Ohio, 601; *Ketchum v. Stevens*, 19 N. Y., 499. 2. A cause of action is shown for breach of contract. One who undertakes to sell any right or interest created by an instrument executed by a third party, impliedly warrants the genuineness of such instrument. *Hurd v. Hall*, 12 Wis., 112; *Lawton v. Howe*, 14 id., 241; Am. Law Reg., April, 1866, p. 336, note, and cases there cited; *Thompson v. McCullough*, 31 Mo., 224. But in this case the complaint shows that defendant made, and plaintiffs relied on, representations that the contract from D'Wight & Co. was a genuine, valid agreement; and these representations, so relied on, amount to a warranty. *Smith v. Justice*, 13 Wis., 601; *Hahn v. Doolittle*, 18 id., 196. The fact that the instrument of transfer, made in pursuance of the defendant's contract, was executed by his sons, in whose name the property stood, cannot relieve the defendant as the real contracting party, from the obligation of his contract. *Boinest v. Leignez*, 2 Rich., 464; *Frey v. Vandenhoff*, 15 Wis., 397; *Sweet v. Mitchell*, id., 664–5. The assignment from defendant's sons was in execution of an agreement which it did not profess to show; and parol evidence is admissible to show what the agreement was. *Frey v. Vandenhoff*, and *Hahn v. Doolittle*, supra.

*J. V. V. Platto*, for respondent:

1. No cause of action is shown as for money had and received. The complaint admits that the contract has been performed in part, and does not allege any return or tender of the articles of personal property and fixtures, or any attempt to put the defendant *in statu quo*. *Weed v. Page*, 7 Wis., 503; *Hurd v. Hall*, 12 id., 112; *Lawton v. Howe*, 14 id., 241; *Masson v. Bovet*, 1 Denio, 69; *Kimball v. Cunningham*, 4 Mass., 502; *Voorhees v. Earl*, 2 Hill, 288; Chitty on Con. (8th Am. ed.), *540. The rule intimated in *Miner v.

*Bradley*, 22 Pick., 459, and contended for by the plaintiffs' counsel, is not the law in this state. The rule has been settled here, as in England and all the states except one or two, as follows : " If a party to a contract elect to rescind it on the ground of fraud, he must do so *in toto ;* he cannot affirm it in part, and repudiate it in part." 7 Wis.. 503 ; Chitty on Con., *636–7. The reason assigned is that a different rule would encourage fraud, by allowing a party to affirm so much of a contract as may be advantageous to him, and rescind as to the residue. 7 Wis., 511–12. " The grossest injustice would ensue if a party were suffered to say that he would retain all of which the title was good, and recover a proportionable part of the purchase money for the rest. Possibly the part which he retains might not have been sold unless the other part had been taken at the same time, and might not be valued in proportion to its extent, but according to the various circumstances connected with it." So here the plaintiffs have the " articles of personal property and fixtures which had been used in said business," and the *recipe*, which involves the *secret* of carrying on the business with success and profit, and which it is impossible for them to restore so as to put the defendant *in statu quo.* The intimation in 22 Pick., 459, claims support from *Johnson v. Johnson*, 3 Bos. & Pul.; but in that case the court says there were " two distinct contracts," while the complaint in this case shows but one contract. Again, it does not appear from the complaint that plaintiffs are not using the *recipe* furnished them, and deriving profit therefrom ; and if this be so, they cannot recover. See Chitty on Con., 540 ; *Bliss v. Negus*, 8 Mass., 46 ; *Conner v. Henderson*, 15 id., *320. 2. No cause of action is shown as for a breach of warranty of title. It appears that the contract of sale was an *executed* contract, signed by C. H. Hawkins & Bro., and not by defendant. The contract was therefore not with defendant.

"All the prior negotiations between the parties are merged in the written contract." 3 Wis., 359; 9 id., 522; *Sigerson v. Cushing,* 14 id., 527; 1 Smith's L. C., 272–3; Chitty on Con., \*395. And if no warranty is expressed in the conveyance, none is implied, and none can be shown by parol. *Peltier v. Collins,* 3 Wend., 459; Williams on Personal Property, \*314, 315. 3. The alleged representations of defendant were in respect to circumstances not material. It would not be a material misrepresentation to say that C. H. Hawkins & Bro. purchased the right of the recipe from D'Wight & Co., when it was not so purchased, but was a secret of their own discovery, and which they had reduced to practical utility; nor to state that they paid $800 for it, if that statement was not true. 1 Story's Eq. Jur., § 191, 195; Adams' Eq., \*177; *Vernon v. Keys,* 12 East., 632; *Starr v. Bennett,* 5 Hill, 303; *Otis v. Raymond,* 3 Conn., 413; *Gallager v. Brunel,* 6 Cow., 347; *Benton v. Pratt,* 2 Wend. 385.

COLE, J. It has appeared to me that the complaint in this case might well be sustained on the first ground taken by the counsel for the plaintiff. He contends that where a number of articles are bought at the same time, and a separate price agreed upon for each, although they are all included in one conveyance or bill of sale, yet the contract, for a sufficient cause, may be rescinded as to part, and the price paid be recovered back, and it may be enforced as to the residue. This is certainly the doctrine of the case of *Johnson v. Johnson,* 3 Bos. & Pul., 162. And that case is cited, and at least impliedly approved in *Miner v. Bradley,* 22 Pick., 457. To the same effect is the case of *Manning v. Humphreys,* 3 E. D. Smith, 218.

Of course a different rule prevails where the contract of sale, covering several articles, is not severable, but is entire. There the party is not at liberty to rescind the contract as to

a part of the articles, and treat it as subsisting as to the residue. In that case, if, for any reason, he would rescind the contract, he must do it *in toto*. *Weed v. Page*, 7 Wis., 503. Now the question arises, Do the allegations of the complaint bring the case within the principles of the decisions first above cited? According to those averments, the parties themselves agreed upon the amount to be paid for the exclusive right to manufacture the "Self-Rising Flour." Eight hundred dollars was the sum fixed upon for that right. That sale is distinct from the one relating to the articles of personal property; and, within the principles of *Johnson v. Johnson* and *Manning v. Humphreys*, the plaintiffs can recover the price of that article without offering to restore the others. They have paid eight hundred dollars upon a consideration which has failed, and they are entitled to recover that sum from the defendant in an action for money had and received. *Cushing v. Rice*, 46 Maine, 303; *Jones v. Ryde*, 1 Eng. C. L., 166; *Ketchum v. Stevens*, 19 N. Y., 499; *Hurd v. Hall*, 12 Wis., 112; *Lawton v. Howe*, 14 id., 241.

The chief justice, however, thinks that the complaint shows a cause of action for a failure by the defendant to fulfill the contract which he made, and that the action can more properly be rested upon that ground. It seems to me that the action can be maintained upon that ground, as well as for a failure of consideration. The defendant represented that he owned the exclusive right of manufacturing and selling the Self-Rising Flour and the recipe within the state, and that he acquired this right from D'Wight & Co., by an agreement made between them and his son for his own benefit. This right he undertook to convey to the plaintiffs for a specified sum, but failed to comply with his contract. It is alleged that he had not the right which he attempted to sell, and that the pretended written agreement of D'Wight & Co. was not a genuine agreement, but was

spurious and void. The action may be regarded as proceeding upon an express or implied warranty of title to an agreement and exclusive right which the defendant sold as his own.

Chancellor KENT, in 2 Com., p. 478, says: "In every sale of a chattel, if the possession be at the time in another, and there be no covenant or warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril. But if the seller has possession of the article, and he sells it as his own, and not as agent for another, and for a fair price, he is understood to warrant the title. A fair price implies a warranty of title; and the purchaser may have a satisfaction from the seller, if he sells the goods as his own, and the title proves deficient. This was the rule also of the civil law in all cases, whether the title wholly or partially failed. In most of the United States the rule of the common law is understood to be, that the mere fact of a sale of chattels implies a warranty of title to the thing sold. See cases in notes to Chitty on Contracts, p. 389, and 1 Parsons on Contracts (5th edition), pp. 573 *et seq.* But it seems that in England the rule is different, and that there is no implied warranty of title on a sale of goods; and if there be no fraud, the vendor is not liable for a bad title, unless there is an express warranty, or an equivalent to it by declarations or conduct. *Morley v. Attenborough,* 3 Wels., Hurl. & Gord., 500. Yet even in this case, PARK, B., says, if a tradesman in the way of trade sells goods at his shop, he must be considered as warranting the title; and he cites a number of English authorities which hold that where one in possession of a personal chattel sells it, the bare affirming it to be his own amounts to a warranty. In *Hurd v. Hall* and *Lawton v. Howe, supra,* the chief justice holds that there is an implied warranty of title in the sales of written instruments or things in action, where the vendee does not obtain what he bargained for, and his views are supported by many

authorities.   See also the cases referred to by Judge RED-FIELD in his notes to *Dumont v. Williamson*, Am. Law Reg., April, 1866, where he shows that the undoubted weight of authority still is, that one passing a note or bill by mere delivery, assumes an implied obligation in all cases, unless there is something to show a different purpose, that the same is genuine, and what it purports to be on its face, and that he has the legal right to transfer the title to the instrument.

These principles in regard to the sales of personal property and choses in action seem to me applicable to the facts stated in the complaint; especially when we consider the representations of the defendant.   He represented that he owned the exclusive right which he offered to sell, and that he acquired it by the written agreement therein mentioned.   In *Jones v. Ryde*, 5 Taunt., 488 (1 Eng. C. L., 166), C. J. GIBBS says, if he who negotiates a note, or other instrument of like nature, which passes by indorsement, does not indorse it, he does not incur the liability which an indorsement would bring upon him; but this declining to indorse the instrument does not rid him of that responsibility which attaches on him for putting off an instrument as of a certain description, which turns out not to be such as, he represents it.   This remark is founded in good sense and morality, and applies to the case set forth in the complaint, with great force.

It has been suggested that it was the duty of the plaintiffs to know, when they purchased the exclusive right mentioned, that, from the nature of things, no such right could exist or be conveyed.   For myself, I am not prepared to say that it is an utter impossibility for a person, by any combination of chemical agencies, to produce an article of self-rising flour for which he would be entitled to a patent under the patent laws of the United States.   The country is full of patents of one kind and another—some of which would seem to be for things of as little value or beneficial use as

such a patent would be.  It does not seem to me at all analogous to the case where a person should attempt to sell and convey the exclusive right to breathe the air, or warm in the sunshine, or do any other thing that all have a right to do. The impossibility of securing an exclusive right to manufacture "Hecker Bros.' Self-Rising Flour," is not so perfectly obvious, that we can say no prudent man would contract for the right.   And unless it is so, it seems to me we cannot pronounce the contract void for its inherent absurdity.

Under the code practice, it has not seemed to me very important to inquire whether this should be treated as an action to rescind the contract of sale for the exclusive right and reclaim the price paid, or as an action for a breach of warranty.  The facts stated will sustain an action on either ground. The only damages claimed for a breach of the contract are the consideration paid.   The defendant did not and could not comply with that part of the contract by which he undertook to convey the exclusive right.  As there was nothing received by the plaintiffs, there is nothing to be returned to make the rescission complete.   According to the complaint, no title to the exclusive right to manufacture the Self-Rising Flour ever passed to the plaintiffs.  Even if the action be founded on the warranty of title, ought not the defendant at least to make restitution of the price of the exclusive right which he did not and could not sell?  It appears to me he should.  Pothier states that by the French law, while a clause in the contract by which the seller stipulates that he will not be liable to warranty, prevents any claim against him for the buyer's damages resulting from his inability to defend him against creditors and to fulfill his promise to cause him to have the thing, yet this does not discharge him from liability to a restitution of the price.   Treatise on Contracts, part 2, chap. 1, Art. 7 *et seq*.  It seems to me, such a rule might well be applied to the facts stated in the complaint, even if the action be founded upon the warranty.

But the question of damages is not properly before us, and I have made these suggestions in answer to some objections taken, that in an action for a breach of warranty of title the price paid for a thing utterly valueless to the vendee could not be recovered back. See *Scranton v. Tilley*, 16 Texas, 184, and cases cited on page 194.

I think the complaint states a cause of action, and that the demurrer was improperly sustained.

*By the Court.*—The order of the circuit court is reversed and the cause remanded for further proceedings.

Mr. Justice DOWNER dissents.