THE GUTTA PERCHA & RUBBER MANUFACTURING COM-
PANY (A CORPORATION) v. CHARLES H. WOOD
AND WILLIAM A. ATWOOD.

*Sale—Warranty—Failure of consideration—Set-off—Error without
prejudice.*

1. In this case it is held that if the defendants purchased from the
   plaintiff rubber belting for sale in their business with an express
   or implied warranty of quality, which, owing to the situation
   of the belting, could not be determined by inspection before
   trial, and paid for it before ascertaining that it was worthless,
   which it proved to be on such trial, they would have a right
   to recover back the purchase price, or set it off in an action
   of *assumpsit* brought by the plaintiff to recover a money
   demand due from the defendants; and that the burden of proof
   would be upon the defendants to show the breach of warranty,
   and that the belting was absolutely worthless for any purpose,
   if not returned or tendered to the plaintiff.

2. The charge in this case (see opinion), except in so far as it
   instructs the jury that if the belting was of some value they
   should find that value, and deduct it from the amount of
   the defendants' claim, is sustained by *Petersen v. Lumber Co.*,
   51 Mich. 86; and, as the jury found the full amount of defend-
   ants' claim, the error in such exception was without prejudice.

Error to Genesee. (Newton, J.) Argued January 6,
1891. Decided February 6, 1891.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts
are stated in the opinion.

*Howard & Gold,* for appellant, contended:

1. The court erred in modifying plaintiff's first request by adding
   the words "unless you find a set-off in favor of the defendants,"
   because the damages claimed by defendants and sought to be
   set off were unliquidated, and fall within the principle laid
   down in *Mitchell v. Shuert,* 16 Mich. 444; *Carter v. Jaseph,* 48
   Id. 615.

2. The court erred in admitting in evidence the invoice of belting of date August 11, 1885. Upon its face it is plain that it could not have been the invoice sent pursuant to defendants' letter of July 30, 1885, for the belting is with one exception of different quantities from those ordered in said letter, and the invoice contains one item not so ordered; hence it did not tend to prove a warranty, but to mislead the jury.

3. The court erred in instructing the jury that if they found "the goods of some value, and not returned, if they were worth returning, then the purchaser would be entitled to recover the difference in value between the price he paid for them and the market value of the articles at the time he received them," said instruction being contrary to the law as laid down in *Mitchell v. Shuert*, 16 Mich. 444; *Carter v. Jaseph*, 48 Id. 615.

4. The defendants settled the question whether the goods were worth returning by sending back the portion used up in threshing service,—which their witnesses and customers Huthinson and Munger testify was of value for that service,—and by retaining the remainder with full knowledge of its quality; and the court had no right to intimate to the jury that the goods might not be worth returning in the manner he did in the charge.

*Durand & Carton,* for defendants, contended:

1. From a perusal of plaintiff's brief it seems to us that but two questions are before the Court for consideration:

*a*—Did a warranty exist, either express or implied, on the sale of the 333 feet of standard belting, on May 10, 1886?

*b*—Was the amount paid for the belting a proper set-off in this action?

If a warranty existed, the defendants had a right to rely upon it, and had a right of action for any damages resulting from its breach; and if the belting proved absolutely worthless, the measure of such damages could be none other than the total amount paid therefor; and if such payment was made in ignorance of the real quality of the belting, it was not a voluntary payment, but money paid without consideration, and would constitute a good demand by way of set-off; citing *Petersen v. Lumber Co.*, 51 Mich. 86.

2. In view of the conflict of evidence as to the worthlessness of the belting, it became a question of fact for the jury, and their finding is conclusive; citing *Parrish v. Bradley*, 73 Mich. 617.

CHAMPLIN, C. J.  This suit was commenced before a

justice of the peace to recover the sum of $46.80 for a bill of goods described as "250 feet 6 in. Red Strip rubber belt," ordered by defendants, who reside at Flint, Mich., from plaintiff, a corporation doing business in New York city, on July 9, 1887. The declaration was upon the common counts in *assumpsit*. The defendants pleaded the general issue, and gave notice that the belting had been warranted, and did not sustain the warranty, and of recoupment of damages therefor.

The plaintiff recovered judgment before the magistrate, and the defendants appealed to the circuit court, whereon leave granted the defendants added a notice of set-off containing the common counts in *assumpsit*. They also put in a notice as follows:

"The plaintiff will further take notice that the defendants in this cause on the trial thereof will further show that on the 10th day of May, A. D. 1886, they purchased of said plaintiff a quantity of Standard belting, consisting of 333 feet, for which said defendants paid said plaintiff the sum of fifty dollars, together with the freight thereon, amounting in all to sixty dollars; that said belting on the sale thereof was warranted by said plaintiff to be of first-class quality, and suitable for the purposes for which said defendants desired the same, and a quality of belting which these defendants could warrant on the sale thereof to their customers; and that said defendants purchased said belting, relying on said warranty so made by said plaintiff as aforesaid, and warranted the same on the sale thereof to their customers; that said belting, instead of being of first-class quality, and suitable for said defendants' purposes, and a quality of belting which defendants could warrant on the sale thereof to their customers, was absolutely worthless, and entirely unsuitable for said defendants' trade, and, by reason of the poor quality of said belting, the same was worthless to said defendants, and they, by reason thereof, lost the sum paid for the same to said plaintiff, to wit, the sum of sixty-dollars, and the said defendants will set off the same against the demand of the plaintiff in this action, and have the balance certified in their favor."

Upon the trial, testimony was introduced from which it appears without contradiction that the plaintiff is a corporation organized and doing business under the laws of the state of New York, and has been engaged in the manufacture and sale of rubber belting for more than 25 years. It appears from the testimony that the defendants had dealt with the plaintiff previously to the time when the bill of goods was sold for which suit is brought. Defendants claimed that plaintiff warranted all goods pur-, chased from it by defendants. This claim was denied by plaintiff, who introduced testimony tending to prove that it manufactured four grades of rubber belting; that the highest grade or brand was the "Monarch;" that the next grade they called the "Maltese Cross;" that the next quality they called the "Red. Strip," and the next grade they formerly called the "Standard," but afterwards changed the name to "Mohawk;" that it never warranted the "Standard," and never authorized its agents to do so, and did not warrant it to the defendants. Plaintiff also introduced testimony tending to show that the plaintiff first began the manufacture of Standard belting experimentally in 1885, and put it on the market in 1886. The effect of this testimony was to disprove the warranty which defendants claimed the agent of plaintiff made in the year 1884, which they claimed was made and intended as a continuing warranty, and also the claim that they had purchased Standard belting of plaintiff previous to 1886, which gave good satisfaction and was war-- ranted.

The defendants offered in evidence a letter to plaintiff dated July 30, 1885, containing an order for good Standard belting, warranted, 300 feet 1½-inch 2-ply; 300 feet 2-inch 2-ply; 200 feet 5-inch 3-ply; 300 feet 6-inch 3-ply,—and the invoice from plaintiff under date of August 1, 1885, filling the order and describing the belt-

ing as "Standard." The first and third assignments of error relate to the ruling of the court in admitting this testimony. There was no error. It had an important bearing in the case in view of the claims asserted by both parties. It tended not only to support the defendants' theory that the quality of Standard belting was warranted to them, but it directly contradicted the testimony of the officers of the company that they did not warrant Standard belting in selling to defendants.

The defendants also introduced testimony tending to establish the fact that, at the time the plaintiff's agent was at defendants' place of business in 1884, he exhibited samples of their Standard belting; and that the goods ordered in July, 1885, were of the same grade and quality of the sample. It further appeared that on May 10, 1886, the defendants bought of plaintiff a bill of rubber belting amounting in the aggregate to $191.23, which they paid for; and among the belting purchased was 333 feet 6-inch 3-ply Standard belting. In fact the whole bill of eight rolls was all of the brand called "Standard" belting, and was so billed to defendants. The widths of the belts were all the way from 6 inches to $1\frac{1}{2}$ inches. After defendants had paid for the 333 feet, they sold 125 feet to a customer for use upon a threshing-machine, which after about three weeks was returned as utterly worthless and unfit for use. They supplied him with another belt from the same · roll, which was likewise returned. Upon the return of the first belt sold, and on October 18, 1886, defendants wrote to plaintiff notifying it that they had sold the belt to a thresher, and it had been returned and had split open in the seam. Plaintiff replied October 20, 1886, that it did not guarantee its Standard belting for use on threshing-machines. An agent of the plaintiff, by the name of Barnes, called upon defendants in March, 1887, and defendants offered

to purchase a roll of Red Strip 6-inch 3-ply belting if plaintiff would allow the price of the 250 feet of worthless belting upon the purchase. The agent forwarded the offer to plaintiff, which it refused, and wrote to defendants March 8, 1887, explaining matters, and reiterating the statement that it never guaranteed a Standard belt for threshing purposes, and stating that it could not believe that Mr. Bradford did either, adding:

"We should like your trade, and wish you could decide to let us fill the order you gave to Mr. Barnes, without the condition you impose."

On July 9, 1887, defendants sent to plaintiff the following order:

"*Gentlemen:* Please ship via Great Eastern Line 250 feet of 6-in. 3-ply Red Strip rubber belting."

This order was received by plaintiff, and it forwarded the same about July 14, 1887. The bill amounted to $46.80, and has never been paid. Soon after receiving these goods the defendants shipped the 250 feet of Standard belting to plaintiff, and notified it that it was at its disposal. It replied that it was aware that it had been shipped back, but refused to receive it. The defendants then sent the plaintiff on August 22, 1887, the following:

"FLINT, MICH., Aug. 22, 1887.
"GUTTA PERCHA & RUBBER MANF'G CO.,
"New York.
"*Gentlemen:* Inclosed please find draft of fourteen and 78-100 dollars ($14.78) to pay—

| | |
|---|---|
| Invoice of | $46 80 |
| Less belt returned | 32 02 |
| | $14 78 |

"Yours truly,
"WOOD & ATWOOD."

The plaintiff refused to accept, but returned, the draft,

and again refused to receive the belting. Another strip of 17 feet was sold by defendants, which also proved to be worthless, as claimed by defendants and testified to by witnesses. The balance of the 333 feet has not been returned nor offered.

The defendants claim, and introduced testimony which tended to prove, that the whole 333 feet of belting was valueless for any purpose, and they claim that, having paid for such belting, the money so paid was paid without consideration, and was so much money had and received by plaintiff to its use, and that they have the right to set it off against plaintiff's demand. If it be true that they purchased belting to sell in their business from the plaintiff with an express or implied warranty of quality, and paid for it before ascertaining that it was worthless, and if the belting was so situated that its quality could not be determined by inspection before trial, and it proved upon trial to be absolutely worthless, the defendants would have the right to recover back the purchase price, or to set it off in an action of *assumpsit* brought by the plaintiff to recover a money demand due from the defendants to plaintiff. In such case the burden of proof is upon the defendants to show not only that the goods purchased were not as represented or warranted, but also to show, in case they are not returned or tendered, that they are absolutely worthless for any purpose.

In this case the court instructed the jury upon the law of the case, as follows:

"Gentlemen of the Jury: The plaintiffs in this case are a corporation known as the 'Gutta Percha & Rubber Manufacturing Company,' who bring their suit against Charles H. Wood and William A. Atwood to recover for a bill of goods sold some time in the year 1887. There is no doubt about the amount of the claim for which the plaintiffs bring this action. It is $46.80, and interest thereon at 6 per cent. from November 1, 1887; but the

defendants claim a set-off against this claim of plaintiffs of $44.45, and interest from the 1st of July, 1886, which they claim they paid in ignorance of the quality of 333 feet of 6-inch rubber belting which they purchased from plaintiffs by the firm name of Wood & Atwood, in 1886, and the plaintiffs request me to charge you—and I do so—

" ' 1. That it appears from the undisputed evidence in this case that in the month of July, 1887, the plaintiffs sold and delivered to defendants 250 feet of what is called " Red Strip belting," at the request of defendants. I charge you, therefore, that the plaintiffs are entitled to recover the value of the same, which in this case has been testified to as the sum of $46.80.'

" I have simply added ' unless you find a set-off in favor of the defendants.'

" ' 2. In this case the defendants have sought to have set off against this demand of the plaintiffs for the price and value of this " Red Strip belting " a claim of damages arising out of the purchase by them and their partner, Edwin Sterner, of some so-called "Standard" goods, which it is claimed did not conform to an alleged warranty. This suit is brought upon a demand for goods furnished the defendants, Wood & Atwood, upon their written order alone, and it is not competent for the defendants to set off any demand against this claim which defendants own jointly with any one else. The jury will therefore disregard the defendants' claim of set-off.'

" I have added ' unless you find that this contract out of which defendants' claim of set-off arises was made with the same Wood & Atwood, and that at the trial below it was agreed that in case of appeal the set-off might be pleaded in the circuit court, and the case tried on the merits in the name of Wood & Atwood, and without regard to Sterner.' If you find that to be so, then you would have a right to consider the set-off. I think those two are all I can give, and I have given these with a little qualification, so counsel can have the benefit of it if I am in error about it.

" I further charge you, gentlemen, if you find that Wood & Atwood, with Sterner, though the firm name was Wood & Atwood, after the receipt of this belting by them, had an opportunity to inspect and examine, and determine by such examination and inspection, the quality of the belting they received, and if defects could have been ascertained by examination and inspection thereof, and without doing so they voluntarily paid their bill, then they cannot have and set off the amount they paid at that time.

" I further charge you that a purchaser who gives an order for articles manufactured by the vendor or seller, who has before that sold and delivered to the purchaser by sample like goods, and when the purchaser gives a subsequent order for like goods, such purchaser is entitled to rely upon the integrity and judgment of the seller in selling him goods to correspond with those before received

in kind and quality, and to fill the order according to the expectation of the purchaser when it is made; and if the purchaser has no opportunity to examine and inspect them; and if the character of the goods are such that inspection would not afford him any opportunity of detecting any defect or fault in the goods, and he, relying upon. the judgment and integrity of the seller, pays for them while he is ignorant of their true condition, and under the belief that they are of the kind and quality he had ordered; and if the seller knew the business of the purchaser, and the uses to which such goods are to be put, and he does not send him the kind of goods ordered, but an inferior kind; and if you find that an inspection would not have disclosed the inferiority or imperfection of the goods received,—then the payment made upon receipt without examination would not be a voluntary payment. If you find the goods were of such a kind and quality that no inspection could have disclosed the defects, and that these defects and imperfections could only be discovered by the practical use of the goods by the purchaser, or by those to whom he has sold them, then upon discovery of the same the purchaser would be required to notify the sender within a reasonable time thereof. In this case it was some time in October, one of the letters show, when complaint was made of the quality of the goods. You will determine whether that was a reasonable time in view of all the evidence given you upon the subject of the sale of the belting and its use, and he would be entitled to recover back the amount he had paid in ignorance of the condition and quality of the goods if they were entirely worthless and of no value. If they were of some value, and not returned, if they were worth returning, then the purchaser would be entitled to recover the difference in value between the price he paid for them and the market value of the articles at the time he received them. If you find that this rubber belting was of any value, then you will determine it.

" The purchasers had the duty imposed upon them of notifying the seller of the condition of the goods and their refusal to accept them, or they could return them. If the purchaser keeps them after he has made the discovery, he must account for them at their market value; that is, when their condition is discovered after payment made. If they were worthless entirely, and of no value, it would not be necessary to return them. But the burden of proving such is the case is on the defendants to show by a preponderance of evidence that the goods were of no value. ;

"If you find that the goods were not entirely worthless, but were of some value, then you will determine that value and deduct that from the amount of the defendants' claim, the market value of such rubber, and the balance remaining you would deduct from the plaintiff's claim, if it is less than the plaintiff's claim, and the

balance would be the amount of your verdict. If the defendants' claim be greater than the plaintiff's claim,—that is, if you find that the goods were absolutely worthless, and were not of the kind ordered, and that the payment made for them was not a voluntary payment made by defendants, and was made in ignorance of the condition and quality of the rubber without any fault or negligence on their part, and could not have been discovered by inspection,—then you could deduct plaintiff's claim from defendants', and the balance would be your verdict for defendants."

We think the court erred in instructing the jury that if the goods were not entirely worthless, but were of some value, then they should find that value, and deduct that from the amount of the defendants' claim. But we are also satisfied from the verdict of the jury that it was error without prejudice, as the jury found the full amount of the defendants' claim, which shows that they must have found also that the goods were of no value. This error in the charge was not passed upon by the decision of *Copas v. Provision Co.,* 73 Mich. 541. The remainder of the charge of the court is sustained by *Petersen v. Lumber Co.,* 51 Mich. 86. We have examined this record with great care, and we are satisfied that no prejudicial error has been committed.

Judgment affirmed.

The other Justices concurred.