# WHEELING.

MANSS-BRUNING SHOE CO. *v.* PRINCE.

Submitted January 20, 1902.    Decided June 7, 1902.

1.  PURCHASER'S LIABILITY FOR GOODS—*Acts of Ownership.*
      A purchaser of goods cannot defeat payment for them on the ground either that he countermanded the order for them, or that the delivery is after the stipulated date, if he takes the goods from the railroad depot to his store, opens the boxes containing them and examines them, or does any act which only an answer can do.  (pp. 512, 513).

2.  SALE OF GOODS—*Rescission of Contract in Toto.*
      A purchaser of goods who has right to rescind the sale contract, must rescind *in toto*, not in part. He cannot keep part of the goods, and return the remainder without becoming liable for the whole.  (pp. 513, 514).

3.  PURCHASER—*Must Pay if He Keeps Part of Goods.*
      A purchaser of goods cannot keep part of them, and return the remainder, and defeat payment for them according to the contract on the ground that the part returned were not of the agreed quality or make.  (p. 514).

4. Verdict Contrary to Law—*Must be set Aside*.
    A verdict which, on the fixed facts of the case, is contrary
    to law, must be set aside. (p. 515).

Appeal from Circuit Court, Mercer County.

Action by the Manss-Bruning Shoe Manufacturing Company
against Ash M. Prince. Judgment for defendant. Plaintiff
appeals.

*Reversed.*

W. Walter McClaugherty, for appellant.

J. M. Anderson and Harold A. Ritz, for appellee.

Brannon, Judge:

The Manss-Bruning Shoe Manufacturing Company brought
*assumpsit* in the circuit court of Mercer County against Ash
M. Prince, surviving partner of a firm which did business in
the name of Ash M. Prince, which resulted in a verdict and
judgment for the defendant, and the plaintiff appealed to this
Court.

The Shoe Company took an order from Prince to manufac-
ture for the firm a lot of shoes, which were made and shipped
to Prince. He refused to pay for them. The defence is that
the shoes were designed for the early spring trade, and were to
be delivered by the 15th day of March, and not having been
shipped Prince wrote on the 17th of April countermanding the
order, and that some of the shoes were inferior to the samples
by which the order was given.

Let us see first as to this countermand. The goods were to
be delivered on or about March 15th. On February 24th the
Shoe Company wrote Prince that the order was that day put
"in work," that is, that the manufacture of the shoes was be-
gun. Prince was silent until the 17th of April, when he wrote
the countermand. The order was not for shoes already made,
but for shoes to be manufactured for Prince's special trade.

In the letter notifying Prince that the manufacture of the
shoes was in progress, the Shoe Company said that the shoes
would be shipped "just as soon as possible." When the order
was made the agent of the Shoe Company told Prince that
there were many orders to be filled. Why did not Prince write
to the Shoe Company telling it that the shoes must come by

March 15th, as this letter of the Shoe Company had said the shoes would be shipped "just as soon as possible," thus indicating that there might be delay, and when he knew by letter of the 24th of February, that the work only then began? The 15th of March came and the shoes did not come. Why did Prince remain silent for thirty-two days after that date? If he needed the shoes so much then, why let the Shoe Company go on so long at work on the shoes? It is different from the case of an order for shoes already made. The damage to the seller in that case would not be so great from a countermand.

When he gave the countermand he knew that the Shoe Company had been engaged on the work fifty-one days, and that a countermand would entail loss on the seller. The defendant knew that the Shoe Company did not keep shoes in stock, but manufactured them upon orders for express use. It cost nothing to mail a letter at Bluefield to the Shoe Company at Cincinnati. Justice to that company demanded it of Prince. Under the circumstances, if the case turned, as it does not, upon this countermand, it would not seem to be just to allow this countermand to avail as a defence. The shoes had then been manufactured. The Shoe Company was derelict, it is true, in failing to deliver by the agreed date; but it claims that Prince was to notify it when to go to work, and this seems likely from the failure of Prince to complain of the delay sooner than he did.

But the case does not turn alone upon the right of Prince to countermand on the 17th of April, or the failure to deliver the shoes by the 15th of March. In fact, that countermand, that delay, are immaterial, playing no part in the decision. The Shoe Company, not recognizing the countermand shipped the shoes on the 21st of April and they arrived at Bluefield before the 26th. The Shoe Company notified Prince of shipment by sending him a bill which was received by him 23rd of April. If Prince wanted to insist that the goods were behind time and countermanded, then was the time finally to do so by declining to take control of the goods; but he paid the freight and took the goods from the depot to the firm's store, opened and examined the goods, and wrote the Shoe Company that the goods had come too late, and that they were subject to its order. This was a waiver of the objection that the goods had come behind time and also a waiver of the countermand. An absolute re-

fusal to accept was the only proper thing to do to insist upon the countermand or lateness of delivery

A purchaser of the goods has the right to take them from the depot or wharf to examine their quality; but if he wants to say that he does not want them at all because of a breach of contract in the time of delivery, or that he had countermanded the order he cannot do this. So, we say that the date of delivery and the countermand are wholly inoperative and immaterial in the case, for reason just stated, and also for reasons below given.

But Prince also says that some of the goods in quality did not correspond with the samples by which they were sold. This defence, as also the defence that the order had been countermanded, and that the goods had come too late, are all met by facts now to be stated. In Prince's letter to the Shoe Company touching the arrival of the goods, he declined to accept them because of his countermand and because of lateness of delivery, and also stated that some of the goods were not up to sample, and added: "I could use a few of them, if you desire." The goods were in his store, the boxes' opened, when he wrote that letter, 26th of April. The Shoe Company did not indicate any willingness for Prince to keep part of the goods. Common sense, common justice, say that he could not keep part of the goods without the seller's consent. This letter shows that Prince knew this. On May 6th, Prince again wrote the Shoe Company stating that he had written it on the 26th of April that the shoes were behind time and not up to sample, but he kept the goods in his store fourteen days after taking from the depot. Did he expect some abatement in price, or that he would be allowed to keep part of the goods? Why not ship back? On the 8th of May the Shoe Company wrote him in reply that the company had written him explaining delay in shipment, that he was to notify them when to go to work on the shoes, and insisting that the shoes were even better than the samples, and that the agent would soon see him and explain matters more fully; but it neither agreed to take the goods back, nor allow him to keep only a part of them. What did he do on receipt of that letter? Did he return the goods as received? Not at all. His own evidence says: "After receiving that letter, I looked over the goods and kept just as many as I could use, and sent the rest back." This decides the case for the plaintiff.

A purchaser saying he countermands an order, yet taking possession of the goods, selecting a part to keep, a part to return. A purchaser who says the delivery is too late, yet does these things. A purchaser who says some of the goods are inferior, sends back the inferior part, and keeps the part up to sample as he himself admits he did do. The positions are utterly inconsistent, unjust, and therefore not allowed by law.

Prince put, as he admits, one hundred and thirty dollars worth of goods out of four hundred and seventy-three dollars and fifty cents, the total value of them, upon his shelves and sold them. Where did he get the right to do this? Not from the plaintiffs. Receipt of goods by a buyer will be a binding acceptance "if any act be done by the buyer which he would have no right to do, unless he were owner of the goods." Benj. on Sales 521. "The buyer will also lose his right of returning the goods delivered to him under a warranty of quality, if he has shown by his conduct an acceptance of them, or if he has retained them a longer time than was reasonable for trial, or has consumed more than was necessary for testing them, or has exercised ownership, as by offering to re-sell them." Here Prince sold part of the goods as his own. Ratification of a part of a contract is ratification of the whole. 7 Am. & Eng. Ency. L. 144 (2d Ed.). In *Maynaw* v. *Render*, 23 S. E. 194, the supreme court of Georgia puts clear law in saying: "They could have repudiated the entire agreement and rejected the whole (cordwood sold) but having elected to accept a portion, they are bound by their election and must receive all." Tiffany on Sales, 111, says: "If the party has enjoyed part of the consideration, there can be no rescission" and, "If the failure is merely as to quality of a part of the goods, the buyer cannot rescind, unless he rescinds in *toto.*" Clark on Contracts, 350 says: "The contract must be rescinded in *toto,* it can not be rescinded in part." Our own case of *Thompson* v. *Douglass,* 35 W. Va. 337, (13 S. E. 1015), shows that acts of ownership over property by a purchaser binds him to a contract. "If one with knowledge of a fraud which would relieve him from a contract goes on to execute it, he thereby confirms it, and cannot get relief against it. He has but one election, to confirm or repudiate the contract, and if he elects to confirm it, he is finally bound by it." *Hutton* v. *Dening,* 42 W. Va. 691. So here. Prince knew of his letter of countermand, of the lateness of delivery,

of the quality of goods, and he could not, without binding himself irrevocably for the price of the goods, take them from the depot, open them, and much less keep part. When Prince took part of the shoes out of the lot to keep, he knew that the Shoe Company would hold him to his contract, because he says that when he had its letter of the 8th of May telling him so. He did this with his eyes open to their claim to hold him to his contract. How can he talk about inferiority of the goods, when for instance, as he admits under oath, out of a lot of six pairs of fine shoes he kept one for his own wear, and sent the remaining five pairs back? They were of the same quality.

Under these principles the court erred in giving the instruction asked by defendant that "the fact that the firm of Ash M. Prince, retained and kept a part of the shoes referred to in this case does not of itself constitute an acceptance of the shoes returned by him."

For same reasons it was error to refuse the six instructions asked by plaintiffs. They are somewhat repetitions, but put the law properly.

They are in effect that if the shoes were received by Prince and taken to their store, and Prince accepted the shoes, or any part of them, and kept such part, or did any act as to such part as the owner thereof, that the firm was liable for the whole price. It was error not to exclude from the consideration of the jury all evidence of Prince and Noble as to the countermand of the order, and as to date of delivery as too late for spring trade, and of the quality of the goods.

It is proper to add that this case does not in the least, as to matters above considered, depend on conflicting evidence, or weight of evidence or its effect or credibility. The facts above stated are not contested. I have not considered any thing as to which conflict of evidence exists.

In fact, there is no conflict of any import. This being so, the court does not invade the province of a jury, but holds that upon the undisputed, fixed facts, the verdict is contrary to the law arising on those facts. This is very different from the case where the court has to find facts on evidence, or on conflict of evidence, differently from the jury. A court must set aside a verdict contrary to law on fixed facts. *Miller* v. *White,* 46 W. Va. 68; *Grayson's Case,* 6 Grat. 712.

Judgment reversed, verdict set aside and new trial granted.

*Reversed.*