# CHARLESTON

EAGLE GLASS & MANUFACTURING CO. v. SECOND HAND PIPE & SUPPLY CO.

Submitted February 18, 1914. Decided April 28, 1914.

1. SALES—*Transfer of Title.*
   When a quantity of pipe is shipped to a buyer on his order and he accepts same on its arrival and uses it in the laying of a pipe line, if there is no stipulation to the contrary, the title passes to the buyer and the sale becomes an executed one. (p. 230).

2. SAME—*Executed Sale—Right to Rescind—Breach of Warranty.*
   In the absence of fraud or an agreement to rescind, an executed and completed sale can not be rescinded merely for the breach of a warranty made in connection with the sale. (p. 231).

3. SAME—*Executed Sale—Breach of Warranty—Measure of Damages.*
   In case of a breach of warranty of quality in an executed sale, the buyer can not rescind and recover the purchase price and expenses paid by him, but the measure of his damages, when there are no

special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to him and the value they would have had if they had answered to the warranty. (p. 231).

Error to Circuit Court, Wood County.

Action by the Eagle Glass & Manufacturing Company against the Second Hand Pipe & Supply Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*W. H. Wolf* and *Van Winkle & Ambler,* for plaintiff in error.

*Erskine, Palmer & Curl, Hubbard & Hubbard,* and *Moss, Marshall & Forrer,* for defendant in error.

ROBINSON, JUDGE:

Plaintiff is a glass manufacturing concern, and defendant is a dealer in second hand pipe. The former by written order purchased of the latter 16,000 feet of 5-5⁄8 casing with the following stipulation: "All pipe including threads and couplings to be in good condition and warranted to stand not less than 100 pounds pressure." When the shipments of the pipe arrived at the destination point fixed in the order, plaintiff unloaded the material, rejecting part thereof as bad, and used the residue in laying a pipe line about three miles long to carry gas from plaintiff's wells to its manufacturing plant. Plaintiff made full payment to defendant for the pipe used in laying the line. When the gas was turned into the line, plaintiff claimed that it leaked out and that the line would not hold even less than twenty-five pounds pressure. Plaintiff called upon defendant to replace the line with other pipe. Defendant refused, insisting that the pipe fulfilled the warranty, and that if the line leaked, bad workmanship in constructing the line caused it to do so. Thereupon plaintiff took up the line and returned the pipe to defendant at the railroad station from which plaintiff had received it. Afterwards plaintiff brought this suit in assumpsit, claiming as damages the full purchase price paid defendant and the amount expended in laying the line, taking up the same, and

returning the pipe to the railroad point.   Such a measure of damages was accorded plaintiff at the trial, and it recovered a judgment for all that it paid for the pipe and all that it expended otherwise in connection therewith.   From that judgment we have this writ of error.

The preliminary point is made that the evidence has not been made a part of the record.   But we find that it was. A bill of exceptions as well as a vacation order made by the judge in proper time sufficiently identifies the stenographer's transcript of all the evidence and makes the same a part of the record.   *Darnell* v. *Wilmoth,* 69 W. Va. 704; *Marshall* v. *Stalnaker,* 70 W. Va. 394.

The declaration is in the common counts and in two special counts pleading a breach of the warranty, and is entirely sufficient.   Of course the common counts avail nothing, as the case, being clearly one of a breach of an express warranty, is not provable under them, but is only provable under the special counts pleading such breach.   Burks' Pleading and Practice, sec. 87.

That the sale of the pipe became an executed one we have no doubt.   Plaintiff accepted the greater part of the pipe delivered, and used the material for the purpose for which it was purchased—the laying of a pipe line.   Plaintiff converted the pipe to its own use.   It used the pipe as its own— made the pipe a part of the fixtures necessary to its manufacturing business.   Defendant did not sell and warrant to plaintiff a pipe line, but merely pipe.   Nor was there any stipulation for a test of the pipe by the laying of a line before the title should pass.   The title to the property which was accepted and used in the construction of the line assuredly passed to plaintiff in the ordinary view of sale transactions.   If when delivery of the pipe was tendered, plaintiff had tested it and found that it did not conform to the warranty, plaintiff then could have rejected it—could have refused to become the owner of it.   Or, plaintiff could without such test take the property as its own and rely on the warranty that the pipe would stand not less than 100 pounds pressure.   Plaintiff chose the latter course, and the sale contract became executed.   The fact of plaintiff's acceptance of the pipe is indeed an uncontroverted one in the case.   It

is not denied that the condition of the pipe was changed by the use. Some of it was bent and broken. "If the vendee does any act to the goods, of wrong if he is not owner of the goods and of right if he is owner of the goods, the doing of that is evidence that he has accepted them." *Parker* v. *Wallis,* 5 E. & B. 21; Tiedeman on Sales, sec. 115.

The contract having become an executed one, what were plaintiff's rights and remedies for a breach of the warranty? Plaintiff insists that it had the right to rescind the sale, and to return the pipe, and then a remedy for damages covering the purchase price it had paid and all expenses it had incurred. May an executed sale be rescinded for the breach of a warranty and the purchase price and expenses connected with the purchase be recovered as damages? Our answer to this question will virtually dispose of all the errors assigned. For, the case was tried on the theory that plaintiff could rescind the executed sale and recover as damages all money and expenses paid, and such theory runs through the giving and refusing of instructions and the overruling of the motion to set aside the verdict and grant a new trial, of all which defendant complains before us.

It is true that in some of the American states a vendee may rescind an executed sale because of the breach of a warranty, and claim as damages what he paid and expended. But such is not the principle of the English law, nor of many American jurisdictions. Tiffany on Sales, 368; Mechem on Sales, sec. 1805; Williston on Sales, sec. 608; Benjamin on Sales, (7th Amer. Ed.), 958, 959; 35 Cyc. 434. "It is the general rule * * * that, in the absence of fraud or an agreement to rescind, an executed and completed sale— as distinguished from the merely executory one—cannot be rescinded for a mere breach of warranty." Mechem on Sales, sec. 816. Nor have we ever understood that with us an executed sale could be rescinded because of a mere breach of warranty unaccompanied by fraud or an agreement to rescind. *Ellison* v. *Grocery Co.,* 69 W. Va. 380. If the warranty is broken, the executed sale nevertheless stands. The breach of the warranty can not in principle operate to revest in the seller the title that passed to the buyer. The purchaser must retain the property, but he may have damages for

the breach of the warranty made to him about it. However, the value of the property that he retains must enter into the ascertainment of damages for the breach. The goods though not as warranted are usually worth something. It does not take all the purchase price to make the buyer whole. ''The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty. In the case of breach of warranty of quality or condition, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty.'' Tiffany on Sales, 368.

There is plain error in the case. The wrong theory of the recovery for the breach of an express warranty in an executed contract has been pursued by plaintiff and sanctioned by the trial court.

What we have said generally is sufficient for direction as to the proper course on new trial. We properly refrain from commenting on the evidence presenting a jury question whether the pipe sold did not fulfill the warranty to stand 100 pounds pressure, or whether the failure of the line to hold such pressure was caused not by defective pipe but by bad workmanship on the part of plaintiff's servants.

The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed and Remanded.*