# CHARLESTON.

## OHIO RIVER CONTRACT CO. v. SMITH.

Submitted May 4, 1915.  Decided June 8, 1915.

1. SALES—*Rescission of Contract—Conditions—Return of Property.*

    A purchaser of personal property, to avail himself of his right to be relieved from his obligation to pay the purchase money, by rejection of the subject of the sale for non-compliance with a condition thereof or by rescission of the contract for fraud or other sufficient cause, must reject or return the property *in toto* and thus place the vendor *in statu quo* as nearly as may be. (p. 506).

2. SAME—*Acceptance and Retention of Property—Waiver of Conditions—Pleading and Proof.*

    Acceptance and retention of part of the property by the purchaser, is a waiver of conditions, misrepresentations and fraud and binds him to payment of the whole of the purchase price, subject to his right of recoupment to the extent of the damages resulting from breach of warranties, if any. (p. 506).

3. SAME—*Action for Price—Breach of Warranty—Pleading and Proof.*

    In an action for purchase money, damages for breach of warranty may be proved under the general issue in assumpsit or debt, provided notice of the claim is filed as a basis therefor, but not otherwise. (p. 506).

Error to Circuit Court, Wood County.

Action by the Ohio River Contract Company against Lloyd E. Smith. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*George W. Johnson, Moss, Marshall & Forrer,* and *H. P. Camden,* for plaintiff in error.

*Ireland & Perkins,* for defendant in error.

POFFENBARGER, JUDGE:

Rulings upon instructions and evidence, the correctness of which depends largely upon principles of the law of sales, are the major subjects of complaint on this writ of error to a judgment for $669.38, in an action of debt for the alleged contract price of certain steel sheet piling, defense to which was made under the general issue and a special plea of set-off for freight on the piling, paid by the defendant.

The contract out of which the controversy arose was a verbal one and is to be deduced from the highly conflicting testimony of three witnesses for the plaintiff, Eichel, Wright and Dotson, all of whom say there was an absolute sale of the piling at the price of $25.00 per ton, and, two witnesses for the defendant, himself and his consulting engineer, Burgess, both of whom say it was to be shipped for trial and subsequent purchase or rental, only in the event it should be found fit for the purpose for which the defendant desired to use it. Sometime after it was shipped, the plaintiff rendered a bill for the purchase money, framed in accordance with its claim as to the terms of the agreement. The defendant says he returned it, with written notice of his election not to purchase or accept the piling because it had been found unfit for use in his work.

The material consisted of 85 pieces of piling weighing nearly 30 tons, and was intended for use in the construction of a coffer dam, incident to the laying of filter beds in the Ohio River, at the City of Parkersburg, under a contract the defendant had with the city for the installment of a filtration plant, as a part of its water-works. Eichel, the president of the Ohio River Contract Company, Wright and Dotson were interested in the Parkersburg and Marietta Sand Company, a corporation, which had the contract with the defendant, for certain work to be done in the construction of the filter beds. They were equal owners of its stock and Wright had formerly been in the employ of another corporation managed by Eichel. These circumstances are relied upon by the defendant, in

connection with other evidence adduced by him, as showing knowledge on the part of the plaintiff, through Eichel, its president, of the nature of the work to be done and the unfitness of the piling in question for use in the prosecution thereof. In fact, the Parkersburg and Marietta Sand Company had purchased the greater part, if not all, of its machinery from the Evansville Contract Company of which Eichel had been manager and for which Wright had worked. Eichel says the piling was suitable, but could be successfully employed only by the use of proper machinery and appliances in the hands of experienced and competent operators or workmen.

When the piling arrived, the Parkersburg and Marietta Sand Company, to whom the contract for driving it had been let, at once received and conveyed it to the place at which it was to be used. Twenty-three pieces of it, a little more than one-fourth of the entire lot, were driven imperfectly and with difficulty on account of alleged defects in them, and then the effort to use them was abandoned and the remaining pieces conveyed to premises of the Parkersburg and Marietta Sand Company and there deposited. Subsequently, at a date not fixed by the evidence, but seemingly after the work had been completed, the twenty-three pieces that had been driven were bent over on the bed of the river and left there. As to this, the defendant says: "I was on the work when they tried to pull it and they couldn't; then they dug down on the out side and it was the intention to bring a float over and fasten them to the float and take a boat and tow them over and pitch them on the bank, but in the meantime Mr. Ruth came up and ordered the pile driver men to knock them over in the river, which he did. And these twenty-three pieces of piling are now lying in the river with the ends lying over in the bottom." Though it does not appear from the testimony, Mr. Ruth was probably a representative of the government and had no purpose other than abatement of the piling as an obstruction to navigation. As to whether the defendant took any beneficial use of the twenty-three pieces the evidence is indefinite. Morgan, an employee of the Parkersburg and Marietta Sand Company, who drove them, says he quit driving them by order of Wright to do so and to use in lieu thereof, wooden piling.

Of those driven, he says they made the coffer incomplete, but not that, as driven, they were unfit for use or were unused.

Lack of any plea of warranty and breach thereof, or notice of recoupment, limited the defenses to insufficiency of the evidence to establish a contract of sale, or to proof of a conditional sale and rejection of the articles for non-compliance with the condition or rescission of the contract. Without a notice thereof, the purpose of which is to prevent surprise, a right of recoupment cannot be relied upon as matter of defense.. *Sterling Organ Co.* v. *House,* 25 W. Va. 64, 87. Such a claim involves admission of the contract of purchase and acceptance of the thing bought, and asserts a right to abatement of the price to the extent of the damages flowing from the breach of the warranty. Neither in his own testimony nor that of any other witness, did the defendant assume such an attitude. His sole contention was entire non-liability, and he asked no instruction authorizing the jury to reduce the plaintiff's demand by an allowance for damages.

Whether there was a contract of purchase before the piling was shipped, as claimed by Eichel, Wright and Dotson, or whether it was shipped for mere experiment or trial, with a view to a subsequent purchase or rental, was submitted to the jury by the instruction given at the instance of the plaintiff, but the correctness of that instruction is challenged because it is binding in form and takes no notice of the theories of a conditional sale and rejection for non-compliance and rescission. This omission as well as the refusal of three instructions asked for by the defendant, embodying these theories, was justified by the acceptance and use of the twenty-three pieces of piling left in the river and failure to deposit them in a place of safety.

The legal consequence of this fact may not have been apprehended or appreciated at the time, but that can make no difference. *Ignoranti legis neminem excusat.* The law recognizes no partial rejection of the subject of a sale, for non-compliance with a condition and rescission, to be effective, must go to the entire subject matter of the contract. In this respect, the rules governing rescission and rejection for non-compliance with conditions are identical. In the one case, the annullment of the contract must be total and complete; in the

other the purchaser must reject *in toto.* In each, the opposite party must be put *in statu quo. Eagle Glass & Mf'g. Co.* v. *Supply Co.,* 73 W. Va. 228, 81 S. E. 976; Mechem on Sales, sec. 1398; *Manss-Bruning Shoe Co.* v. *Prince,* 51 W. Va. 510. Of course, there are exceptions to all rules. If goods are sold with the privilege of a test and return in case they are found to be unsuitable or unsatisfactory, such as are consumed by the test do not have to be returned. But, in the case of an implement or machine, the use of which does not destroy it, a different rule necessarily applies, there being no physical impediment to its return, nor any reason for not returning it. Even though they may have been injured by the test made, these great sheets of steel had value. If insusceptible of repair, their aggregate weight was six or seven tons and they had a scrap-iron or junk value. Besides, a fair test could have been made without the use of one-fourth of the entire quantity.

Under this hard and fast rule of the law of sales, relaxation of which public policy forbids in the interest of certainty and stability of commercial transactions, the evidence of conditions, misrepresentation and defects and unfitness which might have afforded ground for rejection or rescission goes for naught. All these rights are deemed by the law to have been waived or abandoned by partial acceptance of the piling, whether the defendant actually intended to give them up or not.

Assuming the limitations of the cross-examination of Eichel, Wright and Omslaer would have been erroneous, if the defendant had preserved his right of rejection for non-compliance with conditions, the conclusion just announced renders the subject matter of the questions immaterial. In view of the fact on which it is based, the court could have eliminated all of the evidence of conditions, warranties and misrepresentations. For the same reason, the subject matter of some of the offers of evidence by the defendant, which the court rejected, was immaterial. In some instances, objections were sustained to repetitions of testimony, and in others, the witnesses subsequently testified to matters as to which their evidence had been excluded. All of these rulings have been carefully examined and nothing prejudicial in them has been

discovered. To set them all out here and analyze them would be a useless consumption of time and space.

The judgment will be affirmed.

*Affirmed.*