# CHARLESTON.

REGENT WAIST COMPANY v. O. J. MORRISON DEPARTMENT STORE CO.

Submitted March 15, 1921.     Decided March 22, 1921.

1. SALES—*When Contract "Severable" Stated.*

If the part of a contract to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, such a contract is in general severable. (p. 308).

2. SAME—*Contracts for Purchase of Different Kinds of Waists Severable and Purchaser May Accept Those Complying With Contract and Reject Remainder.*

Where a retail merchant orders from a manufacturer of shirtwaists a number of such waists of different kinds and qualities, a definite price being fixed for each of such different kinds and qualities, such contract is separable in the absence of any circumstances indicating the contrary, and if the seller, in fulfillment of his contract, furnishes some of the different items in compliance therewith, and others which are not of the kind and quality stipulated for, the purchaser will have the right to accept such of said lots as comply with the contract, and to reject such as fail to comply therewith. (p. 310).

3. SAME—*Burden is Upon Seller in Suit for Purchase Price to Establish That the Goods Furnished Were of Kind and Quality Stipulated for.*

The burden of proof is upon the seller, in a suit to recover the purchase price of goods sold by him, to establish that the goods furnished are of the kind and quality stipulated for. (p. 311).

Error to Circuit Court, Kanawha County.

Action by the Regent Waist Company against the O. J. Morrison Department Store Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Morton & Mohler,* for plaintiff in error.

*Elmer L. Stone,* for defendant in error.

Ritz, President:

On the 2nd day of October, 1917, the plaintiff's representative called at the storeroom of the defendant in the city of Charleston and exhibited to defendant's general manager and the person in charge of the ladies' waist department certain samples of ladies' waists, with a view of making sales of this character of goods to the defendant. After an inspection of these samples defendant's general manager gave an order to plaintiff's representative for two dozen white waists, stock No. 1138, at the price of $2.25 each; two dozen flesh-colored waists, stock No. 1138, at the price of $2.25 each; two dozen white waists, stock No. 1142, at the price of $3.00 each; two dozen flesh-colored waists, stock No. 1142, at the price of $3.00 each; one and one-half dozen white waists, stock No. 2074, at the price of $2.25 each; one and one-half dozen flesh-colored waists, stock No. 2074, at $2.25 each; one and one-half dozen white waists, stock No. 1120, at $3.00 each; one and one-half dozen flesh-colored waists, stock No. 1120, at $3.00 each; and one-twelfth dozen white waists, stock No. 1140, at $3.50 each. Of this order the two dozen white waists and two dozen flesh-colored waists of stock No. 1138, and the one and one-half dozen white waists and one and one-half dozen flesh-colored waists of stock No. 1120 were to be shipped at once, and the remainder of the order in two weeks. A very few days after this order was given the waists which were to be shipped at once, as aforesaid, together with the two dozen flesh-colored waists of stock No. 1142, were received by the defendant. Upon their receipt the package was opened and examined by defendant's general manager and the woman in charge of its waist department, and, according to their testimony, the one and one-half dozen white waists of stock No. 1120 and the one and one-half dozen flesh-colored waists of stock No. 1120 were inferior in quality to the sample from which the order was made, and were also different in style, and for this reason the defendant immediately returned these two lots of waists to the plaintiff, and notified it of such return and

of the reason therefor. Shortly thereafter the remainder of the order was shipped and was received by the defendant, with the exception that instead of two dozen white waists of stock No. 1142, as provided in the order, only one and one-half dozen were included, and the one-twelfth dozen of stock No. 1140 was not included. Upon the receipt of this shipment the defendant's general manager and the woman in charge of its waist department examined the same and found, according to their testimony, that the one and one-half dozen white waists of stock No. 1142, included in this shipment, were not in accordance with the sample, being different in style and inferior in quality. The defendant thereupon immediately returned these eighteen waists, and notified the plaintiff thereof and of the reason therefor. The remainder of the goods were retained by the defendant. It was provided in the contract that defendant was to have eight per cent. discount for payment within a certain time. Within the time provided the defendant deducted eight per cent. from the cost price of the waists retained by it and sent its check to the plaintiff for the residue. The plaintiff declined to receive this check, not because it was in the form of a check, but because, under its contention, all of the waists shipped by it were in accordance with the sample, and it insisted that the defendant must receive and pay for all of them. It also refused to receive the waists returned from the transportation company. The defendant refused to pay for the waists returned by it, and this suit was brought to recover the contract price for the whole number of waists shipped. The defendant, upon the trial, tendered the amount which it claimed was due the plaintiff for the waists retained, that is, the invoice price less eight per cent. discount, and a trial was had as to the residue of the claim which resulted in a verdict and judgment for the defendant.

The principal contention of the plaintiff is that the defendant must pay for all of the goods shipped to it, inasmuch as it received part of these goods and rejected the residue; that its reception of any part thereof bound it to receive all of them. The issue between the parties as to whether or not the waists that were returned were of the kind and quality

ordered was submitted to the jury, which found for the defendant thereon. Plaintiff, however, contends that this can make no difference; that because of the fact that the defendant, on the receipt of these goods, retained some of them, it is bound to pay for all of them, whether they complied with the plaintiff's contract or not. And this presents the question of whether or not the contract under which the goods were purchased was separable. If it was an entire contract, that is to say, one which could not be divided for any purpose, then the defendant is bound by its acceptance of a part of the goods shipped. If, on the other hand, this contract is separable, and one part in no way dependent upon the other, the defendant had the right to reject such of the lots of goods as did not meet the warranty, and retain such as did meet the warranty. It would seem that when a sale is made as in this case of different kinds of goods, and a unit price fixed for those of each kind, that there would not of necessity be any such connection between the several kinds as would make it an entire contract. If it appears that the seller would not have sold a part of the goods ordered unless the whole order was taken, then it would be an entire contract. If there is such intimate connection between the several items ordered that it may fairly be assumed that the seller would not have made the contract unless all of the goods ordered were purchased it can safely be said that the contract is entire. This rule is not an exclusive one, however. There may be other contracts which would be held to be entire, even though it might appear that the seller would have sold a less amount than that ordered had the purchaser desired it. Of this class are those cases where a definite quantity of a particular article, such as a certain number of bushels of wheat, or a certain number of tons of iron are ordered at a unit price per bushel or per ton. It is ordinarily held that such contracts are entire if the delivery of the whole is made at one time, and that the purchaser must reject or accept the whole thereof. It is generally held, however, that where a contract consists of several distinct items, and the price to be paid is apportioned to each item according to the value thereof, and not as one unit in a whole,

or a part of a round sum, the contract will ordinarily be regarded as severable, and this rule applies even though the contract may in some sense be entire if what is to be paid is clearly and distinctly apportioned to the different articles as such, and not to them as parts of one whole. 13 C. J 563. In this case the defendant insists that each item of waists of different kinds should be treated as a separate order, and the price apportioned to each unit of this item would fix the measure of liability therefor, while the plaintiff contends that the whole order being taken at one time is an entire contract, and that designation of different kinds of waists can not have the effect of separating it into separate orders for waists of the separate kinds. There is no suggestion in this case that the plaintiff would not have sold the defendant the waists which were actually retained by it at the very same price at which it did sell them, if defendant had not ordered the waists which were rejected. In other words, it does not appear that the price of any particular lot of these waists was dependent upon the defendant giving the order which it did give. We can see no good reason for holding, in a case like this, that because the order was taken on one piece of paper it must be treated as an entire order, and the defendant required to accept or reject every item thereof. The rule that such a contract is separable where it is made up of several distinct items, and the price to be paid for each item is affixed thereto, in accordance with its value, seems to us to be based upon sound principles of common sense. It is a well-recognized doctrine that it is the duty of a party to a contract who has been injured by a breach thereof upon the part of the other party to, as far as possible, minimize the damages. The rule contended for by the plaintiff would require the aggrieved party to aggravate the damages as much as possible, for it insists that the defendant should have rejected all of these goods, and then sued for damages for a breach of the contract upon the part of the plaintiff. Suppose in a contract like this that the buyer had an extensive trade which would be lost to him if he had rejected all of the articles shipped. It is well known that such articles as are involved in this suit can only be sold at certain seasons. It would be

unable to supply its trade by going into the market and repurchasing the articles, for the reason that by the time they could be supplied to him by some one else his customers would have made their purchases elsewhere. By retaining such of the items as met the requirements of the contract he could supply his trade to that extent and save the plaintiff the damages which would necessarily result if he was unable to meet the demands of any of his customers for this class of goods. In other words, under the plaintiff's theory, the defendant must reject all of the goods, and the plaintiff would be liable, if any single item thereof failed to meet the requirements of the contract, for all of the damages which the defendant would sustain by reason of lost profits on the sales of all of the articles; while, under the theory of the defendant, plaintiff would be relieved of any damages on account of those items in the order which met the requirements of the contract. We can conceive of no principle of convenience or necessity which makes it necessary to create a situation which would inflict upon one of the parties to a contract a hardship which could be so easily avoided. Why create a situation which would result in a damage suit of substantial magnitude when the same can very simply be reduced to a claim for damages inconsiderable in extent without injuriously affecting the status of either of the parties? An examination of the books leads us to the conclusion that not only is the defendant's contention based on reason, but it is well supported by authority. In Hammon on Contracts, at section 463, the author says: "If a contract, although evidenced by one instrument, is severable into distinct and independent contracts, it is said to be divisible, rather than entire. A breach of one of these independent contracts does not constitute a breach of another, and a breach of one is actionable without reference to the performance of the others. The principal feature of a divisible contract is that either party, having fully performed any one of the several agreements into which the contract may be divided, may sue thereon for its breach by the other party, without pleading or providing performance on his (plaintiff's) part of all the several agreements.

If the consideration of a contract is single, the contract is,

generally speaking, entire and indivisible, whatever the number of items embraced in its subject, and the promises involved in an entire contract are mutual and dependent. If, however, the part of a contract to be performed by one party consists of several and distinct items, and the consideration to be paid by the other party is apportioned to each item to be performed, or is left to be implied under the law, the contract is generally held to be severable or divisible; and the failure of the promissor to perform one item does not entitle the other party to rescind the contract, and refuse to accept further performance, nor discharge him from the obligation of paying for the other items, if they have been performed.''

In 2 Elliott on Contracts, § 1544, the same doctrine is stated as follows: ''The divisibility of the subject-matter, while not controlling, is frequently of importance in determining the intention of the parties. Generally when the part to be performed by the promissor consists of several distinct items and the price to be paid is apportioned to each item according to its value and not as a part of a lump sum, the contract is considered as several.''

And Professor Williston in his work on Contracts, vol. 2, § 1719, also announces the same doctrine: ''The bargain though contemplating but a single delivery may contemplate several distinct sales, several dissociated things being ordered or contracted for, each for a distinct price. Here acceptance of part will not justify any implication of assent to become owner of the remainder, or of discharge of the seller from his legal duty with reference to the remainder. If some of the goods tendered are not in accordance with the contract, the buyer is generally held entitled to accept such of the articles tendered as fulfill the seller's obligation and reject those which do not.''

These texts are well supported by the authorities. *Brown* v. *Exeter Machine Works*, 60 Pa. Sup. Ct. 365; *Amsler* v. *Bruner*, 173 Ill. App. 337; *Barlow Mfg. Co.* v. *Stone*, 200 Mass., 158; *Young & Conant Mfg Co.* v. *Wakefield*, 121 Mass. 91; *West End Mfg. Co.* v *Warren Co.*, 198 Mass. 320; *Pierson* v. *Crooks*, 115 N. Y. 539; *Thompson* v. *Fesler* (Ind.) 123 N. E.

188; *Katz* v. *Bedford* (Calif.), 1 L. R. A. 826 and note; *Wooten* v. *Walters* (N. C.), 14 S. E. 734; *Stearns Salt & Lumber Co.* v. *Dennis Lumber Co.*, 188 Mich. 700, 154 N. W. 91, 2 A. L. R. 638 and monographic note; *Cohen* v. *Pemberton*, 53 Conn. 221, 55 Am. Rep. 101; *Canton Lumber Co.* v. *Liller*, 107 Md. 146; *Holmes* v. *Gregg*, 66 N. H. 621; *Schiller* v. *Blyth & Fargo Co.*, 15 Wyoming 304; *Larrowe Miller Co.* v. *Lyons Beet Sugar Refining Co.*, 122 N. Y. Sup. 567; *Molling* v. *Dean*, 18 T. L. R. 217.

We conclude that the contract in this case was severable, at least to the extent that the defendant undertook to so treat it. It will be noted that it did not break any one of the items contained in the order, but either rejected each item entire, or accepted it entire. Whether each separate garment would constitute a separate part of the contract we are not called upon to say. It may be that a contract such as this could only be severed to the extent that was done by the defendant in this case, that is, into the separate items contained in the order, and not into the separate articles composing each of these items.

The plaintiff relies upon the case of *Manss-Bruning Shoe Co.* v. *Prince*, 51 W. Va. 510, as controlling this case in its favor, and point three of the syllabus in that case would seem to justify this conclusion. The facts in that case, however, were exceptional. Prince's conduct in regard to accepting or rejecting the goods was equivocal. He did not, as the plaintiff did here, upon finding that they did not answer the requirement of the contract immediately reject those lots which were not of the quality bought, and return them, but he entered into negotiations with the shoe company in regard thereto, and even when he did finally return the same he kept some of the lots, and some of the very shoes which he claimed were of inferior quality. Under these exceptional circumstances the court held this conduct amounted to an acceptance of the whole. The syllabus of the case must be read in the light of the facts which the court was considering, and so construed. The statement contained in point three is broader than the facts in that case required, and in considering it it should be limited in its meaning as applying to the case

made. The case of *Ohio River Contract Co.* v. *Smith,* 76 W.
Va. 503, also relied upon, is not applicable to this case. That
was a sale of a quantity of piling at so much per ton. It was
not a sale of separate pieces of piling at so much per piece,
as is the case here. It was the kind of a contract which is
ordinarily held to be entire.

The plaintiff insists that the question as to whether or not
this contract was severable or entire was one of law for the
court, and that the court erred in submitting the same to the
jury. We agree with the plaintiff in this conclusion. Under
the facts proven here there was no question to be submitted
to the jury as to the entirety or severability of this contract.
It was one of construction for the court. The jury, however,
gave the contract the only construction which we think it will
bear, and the action of the court in submitting the question
to the jury has resulted in no injury to the plaintiff.

The plaintiff also claims that the court erred in instructing
the jury that the burden was upon it to establish that the
goods which it furnished was of the kind and quality sold.
We do not think there is any error in this. This suit was
brought to recover goods shipped upon a contract, and it is
the ordinary rule of practice that when one seeks to recover
upon a contract for the sale of goods he must show that the
goods delivered by him in fulfillment of the contract were
of the kind and quality stipulated for.

It is also insisted by the plaintiff that it is entitled at least
to recover the discount which the defendant deducted from
the invoice price of the goods accepted by it. We cannot agree
with this conclusion. A check was sent to pay for these goods
within the period allowed for discount, and was rejected
by the plaintiff, not because it was a check, but because the
defendant, according to its theory, must pay for all of the
goods. Under this state of facts, the defendant having made
good its claim that the merchandise rejected was not of the
quality purchased by it, the plaintiff was in default in not
accepting the payment at the time it was offered, and can-
not, by its refusal so to accept it, deprive the defendant of the
discount allowed by the contract.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*