**NORFOLK STATIONERY CO., Inc., v. ROYSTER INV. CORPORATION.**

**In re WINDSOR SURF & GOLF CLUB, Inc.**

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2649.

1. Bankruptcy ⚖️340(4)—Evidence held to show office equipment was purchased and offices leased for bankrupt by agent, and conditional seller's knowledge thereof.

On issue whether rent due from bankrupt took precedence over unpaid balance of purchase price of office equipment due under conditional sale contract, evidence *held* to show that individual, who in his own name purchased office equipment and leased office space, acted as agent for bankrupt corporation, to which he subsequently transferred the personal property and lease, and also showed seller's knowledge of the transfer.

2. Bankruptcy ⚖️350—Landlord's lien held entitled to precedence over claim for price of articles delivered under conditional sale contract more than five days before its filing (Code Va. 1919, § 5189, as amended).

Under Code Va. 1919, § 5189, as amended by Acts Ex. Sess. 1919, c. 26, Acts 1920, c. 280, Acts 1922, c. 49, and Acts Ex. Sess. 1923, c. 159, providing that sale of goods reserving title or lien in seller to secure payment is void as to buyer's creditors or purchasers for value without notice, unless contract is filed within five days from delivery of goods, landlord's lien for rent took precedence over conditional seller's claim for unpaid purchase price as to all articles of office equipment delivered to bankrupt buyer more than five days prior to filing of the contract, as against seller's contention that it had five days after delivery of last article under the conditional sale contract within which to record its reservation of title, and that such recordation protected all articles delivered under the contract, regardless of time of delivery.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy; D. Lawrence Groner, Judge.

In the matter of the Windsor Surf & Golf Club, Incorporated, bankrupt. From a decree giving precedence to the claim of the Royster Investment Corporation, the Norfolk Stationery Company, Incorporated, appeals. Affirmed.

E. A. Bilisoly, of Norfolk, Va., for appellant.

Cadwallader J. Collins, of Norfolk, Va., for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This is an appeal from a decree of the United States District Court for the Eastern District of Virginia, of June 21, 1927, entered in the matter of the Windsor Surf & Golf Club, Incorporated, bankrupt, in bankruptcy, and involves the question of whether the proceeds of the sale by the court's receiver of certain of the assets in bankruptcy should be first subjected to the payment of a lien for rent in favor of appellee corporation for $733.32, in preference to the claim of the appellant for unpaid purchase money for the property sold claimed under a vendor's lien.

[1] The facts in the case are briefly these:

On the 1st of October, 1926, the appellant company entered into a contract with one Thomas H. Berry, then of the city of Norfolk, to sell him certain property enumerated in the contract at the price of $2,300, $100 to be paid in cash, and the residue of $2,200 to be paid in twelve monthly installments of $183.33 each. Title was to be retained by vendor until all the purchase money was paid. On the 3d day of September, 1926, the appellee, Royster Investment Corporation, leased to said Berry certain rooms, numbered 1228, 1230, 1232, and 1234, in the twelve-story Royster Building, located at the northwest corner of Granby street and City Hall avenue, Norfolk, Va., for a term of 15 months, beginning on the 1st of October, 1926, at $2,749.95, payable in monthly installments on the 1st of each month. The twelfth provision of said lease was as follows:

"Twelfth. It is understood and agreed that the lessee is extended the privilege of transferring this lease to the Windsor Surf & Golf Club, Incorporated, from the date of its incorporation."

Subsequently, and as contemplated by said section 12, Berry assigned to the Windsor Surf & Golf Club, the bankrupt corporation, said lease, which was accepted by the bankrupt company on the 1st of October, 1926, and the purchase money charged up as a liability of the corporation, and the acquired personal effects treated as an asset thereof. The rooms thus leased in the Royster Building were used as the offices of the bankrupt corporation, the name of the company being printed on the doors thereof.

On the 17th of March, 1927, the Windsor Surf & Golf Club was duly adjudged a bankrupt, and the said personal property, consisting of furniture and fixtures located in the rooms in the Royster Building listed as assets, and the debt scheduled as a liability. While it does not appear that the appellant corporation was formally notified of the transfer of the lease from the appellee company to the bankrupt company, and the transfer of the property purchased from it by Ber-

ry, still the trial court held, and we think correctly, that Berry took the lease and purchased the property in his own name as agent for the gulf club, as the twelfth clause in the lease contemplated, and that the appellant company, with the name of the bankrupt firm upon the doors of the offices in which the property was placed and used, with the furniture carried on the books of the club as an asset, and debited as a liability, and the money for the lease being paid by the bankrupt company, necessarily had knowledge of the transfer to the bankrupt company.

[2] The court further held that the proceeds of the sale of the property of the bankrupt company found in its offices, at the time of the bankruptcy, save those arising from the sale of an iron safe placed upon the premises on the day of the recordation of the contract reserving title, was liable for the arrearages in rent due thereunder, to wit, $733.-32.

This raises the question whether the rent due took precedence over the unpaid balance of purchase money under the contract of sale as presented by the assignments of error. The correct solution thereof depends upon the interpretation to be placed upon the Virginia statute, section 5189 of the Code of Virginia of 1919, as amended by Acts of 1919 (Ex. Sess. c. 26), 1920 (chapter 280), 1922 (chapter 49), and 1923 (Ex. Sess. c. 159). This pertinent section, as amended, is as follows:

"*Reservation of Title to, and Liens on, Goods and Chattels Sold to be Void as to Creditors, and Purchasers for Value, Unless in Writing and Docketed.* Every sale, or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved, until the same be paid for, in whole or in part, or the transfer of title is made to depend on any condition, where possession is delivered to the vendee, shall, in respect to such reservation and condition, be void as to creditors of the vendee who acquire a lien upon the goods and as to purchasers from the vendee, for value, without notice, from such vendee unless such sale or contract be evidenced by writing, signed by the vendor and the vendee, setting forth the date thereof, the amount due, when and how payable, a brief description of the goods and chattels, and the terms of the reservation or condition; and unless said writing is filed for docketing with the Clerk of the county or corporation, where deeds are admitted to record, as provided by law, in which said goods and chattels may be; provided, that if

such filing for docketing be done within five days from the delivery of the goods and chattels to the vendee, it shall be as valid as to creditors and purchasers as if such filing for docketing had been done on the day of such delivery of the goods and chattels. * * * *"

The statute clearly provides for the reservation of title by vendors of personal property in Virginia. There appears to be no contest between the parties as to the existence of a lien for rent in favor of landlords such as is claimed in this case, and only the right to the particular lien and the order of priority are involved. The conditional sales contract covering this property was dated October 1, 1926, and, with the exception of the last article of property mentioned, to wit, the iron safe, the same was duly delivered, though for the convenience of the parties some articles were subsequently temporarily changed. No recordation of the contract of sale and reservation of title was made until a subsequent date, to wit, December 9, 1926, and on this last-mentioned date the iron safe in question was delivered.

Appellant earnestly insists that the true intent and meaning of the Virginia statute is that it had five days after the delivery of the last article covered by its conditional sales contract within which to record its reservation of title; that the contract was one of entirety, and indivisible as respects the several articles covered thereby; and that the benefit of the lien in favor of the vendor and of the recordation of title remained and continued until five days subsequent to the delivery of the last article thereunder.

After much consideration, we cannot take this view of the statute. On the contrary, it is the very reverse of what was intended by the Legislature in its enactment. Such an interpretation would destroy the real benefits designed to be accomplished by the statute, namely, that vendors seeking to reserve the title to property sold and delivered to vendee should do so by appropriate instrument in writing, but that thereafter, in order that sales might not be consummated as against creditors of, and purchasers from vendees, such instrument should be docketed and recorded in the clerk's office of the county or corporation where such goods and chattels might be, and the statute in terms provided for the recordation of such reservation of title within five days of the delivery of the goods and chattels. The Virginia statute, in authorizing the perfecting of a lien by the recordation of the conditional sales contract

within five days after the delivery of the goods and chattels covered thereby, clearly indicated the purpose of the Legislature not to leave the matter of securing a lien thereunder open and uncertain, even as to the amount thereof, as would be the result of adopting the view contended for. To do this would destroy the very purpose and effect sought to be obtained by the statute, and would result in the same being used as a cloak for fraudulent transactions, instead of insuring the desirable end which it was enacted to secure. There would seem to be no reason why a contract of this sort should not be recorded on the day of its execution and delivery; and the same would be good as to property then delivered or delivered within five days thereafter. The result in this case would be to insure to the appellee the payment of its rent claim of $733.32, assuming the proceeds of the sale of the articles in the office of the bankrupt corporation, other than the safe, to be that much, and the vendor, the appellant herein, the proceeds of the sale of the safe.

We have given careful consideration to the following authorities cited by appellant in support of its views: R. H. Thomas Co. v. Lewis Hubbard & Co. et al., 79 W. Va. 138, 90 S. E. 816; Regent Waist Co. v. Morrison, etc., 88 W. Va. 303, 106 S. E. 712; In re Gosch (Berlin Machine Works v. Hilton & Dodge Lumber Co.) (C. C. A.) 126 F. 627; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Williston on Sales, §§ 94 and 277—as we have also to the able argument submitted by counsel in its behalf. Our opinion is that the authorities cited do not, under the facts and circumstances of this case, warrant a conclusion other than that which we have reached, nor are we persuaded of the soundness of the views presented by counsel for appellant. The decision of the lower court is, in our opinion, plainly right, and is hereby affirmed, with costs.

Affirmed.