THE HARTLAND COLLIERY COMPANY *v.* J. H. BURNS & BROTHER COMPANY

(No. 7145)

Submitted March 23, 1932.   Decided March 29, 1932.

*J. Howard Hundley,* for plaintiff in error.
*Lively & Stambaugh,* for defendant in error.

HATCHER, PRESIDENT:

Upon the trial in the common pleas court, an instructed verdict was rendered for plaintiff for $244.50, and judgment rendered thereon, from which, defendant prosecutes error.

The suit is for lumber sold by plaintiff to defendant and originated in a justice's court where, upon trial, plaintiff recovered judgment for $244.25; and upon appeal, the above judgment was rendered.   The circuit court declined to review the case.

Defendant purchased the car of lumber in controversy by written order to plaintiff accepted by the latter which shipped the lumber to defendant as directed. Defendant reconsigned the shipment to a purchaser in Ohio who refused to accept a part of the lumber as not conforming with its written order to defendant. The purchaser in Ohio and defendant together inspected the lumber, and the former agreed to and did take 11,991 feet of the 17,427 feet shipped, at a reduction of $3.00 per thousand from its purchase price of $40.00 per thousand. The remainder, 5,436 feet, was stored. Defendant company operated at Mansfield, Ohio, and had received an order from Troy Sunshade Company of Troy, Ohio, for 4x4 log run, dry West Virginia Beech to grade 75% No. 1 common and better, dated March 15, 1930. Defendant's agent, G. C. Lewis, of Charleston, West Virginia, went to plaintiff's plant at Hartland, Clay County, West Virginia, some time prior to July 9, 1930, and was shown a pile of lumber which plaintiff had for sale, consisting largely of beech with other hardwood, and a price of $27.00 per thousand was agreed upon. On the 9th of July, Lewis made out an order for "4-4 Common & *Beter* Beech at least 60% No. 1 Common & *Beter,* bright dry stock. Good widths and long lengths. Tally on grade, but load as the stock runs. Put on B/L Stop at yard of S. & S. Lumber Co., West Charleston, W. Va., for sorting." The lumber was shipped to defendant billed as hardwoods. The car contained 3,419 feet of hardwood lumber other than Beech. It was not stopped at West Charleston for sorting, but was there reconsigned by defendant direct to Troy Sunshade Company at Troy, Ohio. Upon arrival there July 21st, the Sunshade Company wired defendant that the lumber was not satisfactory, and asked a representative of defendant to call and inspect the lumber. A Mr. Carroll responded in person on July 24th, and as a result of the inspection and conference, 11,991 feet was accepted by the Sunshade Company at a reduced price of $3.00 per thousand ($37.00) and the remainder stored. On July 28th, defendant wrote plaintiff that its customer had unloaded the car, and found 11,991 feet 4-4 Com. & Bet. Beech running 60% lengths; 1,117 feet stained stock; and 4,319 feet of other

hardwood. Defendant then proposed to accept the 11,991 feet at a reduction of $3.00 per thousand (the sale price was $27.00), the balance to be moved from its customer's yard at once, and asked plaintiff to wire if it accepted the offer; and if so it would be necessary for. plaintiff to allow a further reduction of $2.00 per thousand to cover its salesman's expense. To this letter it received no answer, and on August 2nd, wired plaintiff to know if its offer would be accepted as its customer insisted that it must know immediately. On August 12th, plaintiff wrote defendant in answer to its letter and wire to the effect that their order was filled according to instructions; that plaintiff had shipped no lumber to Troy, Ohio, and that defendants should perform their agreement.

Defendants say that the court erred in directing the verdict, because the measure of damages was not the contract price of $27.00 per thousand feet; the true measure being the proceeds of the sale it made to its customer, the Sunshade Company, less the reasonable expenses incurred by defendant in making the sale. Defendant takes the position that it rejected the car load, and that it sold a part of the lumber as the agent of plaintiff to Sunshade Company, and therefore was only entitled to account for the proceeds less the reasonable expense in. making the sale. That position is not borne out by the facts. Defendant sold the 11,991 feet of Beech at $37.00 per thousand, which amounts to $443.63. The car contained 17,427 feet in all, which, at $27:00 per thousand, amounted to $470.29. Defendant's sale to its customer lacked about $26.89 of making plaintiff whole. Of course, on the theory of agency, defendant would be entitled to its reasonable costs. But defendant accounted for less than one-half of the price it received, acting as if plaintiff had accepted its offer contained in the letter of July 28th. Defendant did not act on the theory of agency, but now defends on that theory. What it actually did is inconsistent with its defense.

Under the law of sales, if a purchaser accepts and retains a part of the property sold by an indivisible contract, he is liable for the entire purchase price. He must reject or return the property *in toto* and thus place the vendor in *status quo* as near as it is possible to do so. *Ohio River Con-*

*tract Co.* v. *Smith,* 76 W. Va. 503, 85 S. E. 671; *Manss-Bruning Shoe Co.* v. *Prince,* 51 W. Va. 510, 41 S. E. 907. It will be observed that defendant contracted the lumber to be sent to yards in West Charleston for sorting. Instead of inspecting and sorting the lumber at that point, it reconsigned the car and sold the lumber to its purchaser who had given an order for Beech about four months before. That purchaser, on July 24th, accepted the Beech, rejected the other hardwood, and paid for the Beech, or agreed to pay therefor. It does not appear on what date payment was made. Exercising ownership as by offering to re-sell is inconsistent with rejection *in toto. Manss-Bruning Shoe Co.* v. *Prince, supra.* On August 12th, plaintiff wrote defendant in answer to its letter and telegram that it was standing on its contract of sale, and had not shipped lumber to Troy, Ohio. What right did defendant then have to dispose of a part of the lumber, if it had not done so on July 24th? Then was the time to rescind *in toto,* and so notify plaintiff.

But defendant contends now that it acted as the agent of plaintiff *ex necessitate rei* in selling a part to its customer, and invokes *Norman Lumber Co.* v. *Keystone Mfg. Co.,* 100 W. Va. 515, 131 S. E. 12, as authority for so doing. In that case, the contract of sale was severable, and the lumber in some of the later cars was not of the kind and quality specified in the contract, and these later shipments were rejected *in toto.* The seller insisted that the lumber was as contracted for; and there being a rejection *in toto* of these later cars (severable parts of the contract), we held that the purchaser having rejected *in toto* he could, under the circumstances of that case, sell the lumber as the agent of the seller, and account for the proceeds, less reasonable expenses. That case is quite different from the present one. The case of *Waist Co.* v. *O. J. Morrison Dept. Stores Co.,* 88 W. Va. 303, 106 S. E. 712, also relied upon, involved a severable contract of sale, and has little application here.

In the instant case, there was opportunity for inspection and sorting, contracted for and given, at a designated place. Defendant, without availing itself of this contracted opportunity, re-sold a part of the lumber at a profit of $10.00 per

thousand feet, and rejected the other part, storing it and notifying plaintiff it would assume no responsibility for moving the rejected part.

The decisions in *Manss-Bruning Shoe Co.* v. *Prince,* and *Ohio River, etc.* v. *Smith, supra,* govern this case in favor of plaintiff, and the court of common pleas was not in error in directing a verdict for plaintiff.

*Affirmed.*